UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| JOHN HENRY SAVOIE | CIVIL ACTION NO. 08-CV-1138 |
|---|---|
| VS. | JUDGE MELANÇON |
| MICHAEL J. ASTRUE<br>COMMISSIONER SOCIAL SECURITY<br> ADMINISTRATION | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and pursuant to 42 U.S.C. §405(g), the undersigned concludes that there is no substantial evidence in the record to support the Commissioner's finding of non-disability, and it is recommended that the Commissioner's decision be **REVERSED**.

*Background*

Appellant John Henry Savoie is 45 years old. Savoie has a high-school education and vocational training as an automobile mechanic, and has worked in the past as a mechanic, tire repairer and as a parts salesman. On July 6, 2006, Savoie applied for disability and supplemental security income benefits alleging neck, back, legs and arm impairments, headaches, and memory problems arising out of a car accident in March 2006. He also alleges that he is impaired by acid reflux.

On February 26, 2008, following an administrative hearing, an Administrative Law Judge concluded Savoie could perform his past relevant work as a parts salesman and therefore was not

disabled. On July 3, 2008, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Savoie now appeals.[1]

## *Applicable Law & ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 2 that Savoie's degenerative disc disease of the cervical spine and chronic pain were severe impairments. He continued with the sequential analysis, finding at Step 4 that Savoie has the residual functional capacity to perform

---

[1] The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

the full range of light work. Relying on the testimony of a vocational expert, the ALJ found at Step 5 that Savoie could perform his past relevant work as a parts salesman as it is actually and generally performed. The ALJ concluded that are jobs that Savoie could perform which exist in substantial numbers in the economy, and that he, therefore, is not disabled.

## *Medical Evidence*

### *A.    Savoie's Testimony*

Savoie testified that his last work was as a mechanic, and he stopped working as a result of his March 2006 automobile accident. He also had worked at an auto parts store and at an Exxon station for many years.[2]

At the hearing, Savoie testified he was having neck pain, shoulder pains, numbness in his arm, and that his left leg gave out a lot.[3] His neck was rigid, and it was "hard to move it."[4] Savoie testified that his doctors told him that he probably would need surgery, but they were going to wait a year to see if it got any worse; if he had arthritis, the surgery would not relieve the pain.[5] According to Savoie, his pain was aggravated by moving around, and sitting for a long time.[6] He cannot move his neck fast without pain, and there is limited motion in it. He cannot sleep for long periods because he cannot get in a comfortable position. Savoie has pain every

---

[2] Savoie had worked previously for 10 years at the Henderson I-10 Exxon doing similar, maintenance type work. Before that he worked at Butch's Tire Center in St. Martinville mounting tires on cars and doing mechanic work. Savoie also worked at an auto parts store for a year but "it was too hard on [him]" because they converted to computers and he "wasn't smart enough for it."

[3] Id.

[4] Id.

[5] Tr. 232.

[6] Id.

day, and problems with his left arm that restricts his ability to use it, particularly in reaching.[7] He can lift 5-10 pounds occasionally without significant pain but cannot carry this weight very far; he can stand from 10 to 30 minutes at a time; he can sit for 10 to 30 minutes at a stretch; sometimes he can walk a block but sometimes he has trouble walking from the living room to the kitchen; he cannot bend down all the way and can stoop slowly, but it is hard to get up. He cannot "stick" his arms all the way forward. He sometimes needs help dressing. He cannot tie his own shoes because he cannot bend over; sometimes cannot undo his pants.[8]

Savoie testified he wakes up his little girl for school and then lies down again; sometimes he makes coffee but has to rest before he drinks it.[9] He tries to help his wife wash dishes and do other chores, but he cannot finish the tasks and must lie down. Savoie switches positions all day long, walking, then sitting or lying down, in order to make himself comfortable.[10] He is never able to finish cutting his grass because the mower knocks him around. Savoie drives himself short distances, usually getting out about once a day.

Savoie believes he cannot work because he gets aggravated when he is unable to get comfortable.[11]

---

[7] Tr. 233.

[8] Tr. 235.

[9] Id.

[10] Tr. 236.

[11] Tr. 238.

B.      *Medical Records*

In March 2006, Savoie was involved in an automobile accident. According to notes made by Dr. Debra Durham, an internist, Savoie first saw her on March 6, 2006.[12] At that time, she believed Savoie had a cervical strain, possibly with underlying arthritis with crepitus over the left neck. Dr. Durham prescribed muscle relaxants and told him to continue Advil. She notes that Savoie's pain continued when he tried to return to work as a mechanic. She obtained an MRI which showed multiple disc bulges with a protrusion at C5-6, C6-7, C7-T1 and T3-4 and degenerative changes in the joints around it effacing the thecal sac at several levels. Dr. Durham opined:

> I would not expect him to ever be able to return to his previous occupation of mechanic with the findings on his MRI. His educational level is poor and retraining for sedentary jobs is questionable. I would expect him to remain disabled for life even with surgery on the disc herniations.

Savoie again complained of neck pain and dizziness to Dr. Durham on May 10, 2007, and was prescribed Flexeril and Ultram.[13] Dr. Durham saw Savoie again on August 23, 2007.[14] Savoie complained of "a lot" of pain and was taking Flexeril and Ultram. Dr. Durham's impression was "depression with chronic pain and rectal bleeding."[15]

Upon referral from Dr. Durham, Dr. Leoni, a neurosurgeon, examined Savoie on June 20 and June 29, 2006. Savoie complained of continued neck and left arm pain.[16] Dr. Leonie found

---

[12] Tr. 141.

[13] Tr. 182.

[14] Tr. 194.

[15] Id.

[16] Tr. 177-178.

no weakness in Savoie's biceps, triceps, brachial radialis, deltoid, or grip bilaterally; and no muscle weakness or reflex asymmetry. After reading Savoie's June 2, 2006 MRI scan, Dr. Leonie concluded that Savoie had herniated discs at C5-6 and C6-7, central right, and a disc bulge at C7-S1 that did not appear to be causing Savoie any problems. Dr. Leoni prescribed a Medrol Dosepak. On June 29, Dr. Leoni reported that Savoie had not improved with Medrol. He wrote:

> This man continues to have neck pain tat is intermittent and he gets some left trapezius pain with it. His scan done four weeks ago shows a herniated disc at 5-6 and 6-7 but I was worried that he had bony changes at 5-6. I was wondering if that was a fracture. He has not improved with Medrol and I have placed him on Darvocet, and I have ordered a CAT scan with intrathecal dye to see if there are any bony changes at 5-6 secondary to the accident.[17]

Savoie was treated at the University Medical Center from October 24, 2006 until September 6, 2007.[18] On October 24, Savoie complained of neck pain and was referred for a neck CT.[19] On December 5, 2006, Savoie reported to UMC Emergency Room, complaining of pain score or 9/10.[20] He was given his MRI results in connection with his neck and shoulder pain; however, the results are not included in the record.

There is a radiology report dated February 1, 2007 showing the results from an MRI. The radiologist's impression was of a central disc herniation at C5-6; left posterior lateral disc herniation at C6-7 comprising the exiting left neural foramina; and small central disc bulges at

---

[17] Tr. 177.

[18] Tr. 147-174.

[19] Tr. 164.

[20] Tr. 161.

the C3-4 and C4-5 level.[21] Outpatient clinic progress notes that date direct a referral to Shreveport neurosurgery for possible surgery options.[22]

On September 6, 2007, Dr. Justin Ardoin, one of Savoie's UMC physicians, completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)."[23] Dr. Ardoin indicated that Savoie suffered with chronic neck/back pain with documented neural compromise by MRI. He concluded that Savoie: would need to alternate sitting, standing, walking, and lying down equally throughout the day and need to elevate his feet/legs throughout the day to relieve pain, swelling, or other symptoms; was limited in reaching with his right hand to only occasionally; he could never reach overhead or "all other" with the left hand nor could he push/pull with the left hand, he would be required to take unscheduled breaks every 30 minutes for approximately 10-15 minutes due to pain and fatigue, and he would miss work or have to leave early at least once a week.

St. Martin Hospital treated Savoie during 2006 and 2007.[24] A March 2006 x-ray showed loss of the normal lordotic curve with evidence of muscle spasm and early cervical spondylosis at C5-6.[25] He presented at the emergency room on October 28, 2006 for attempting to take a handful of pills. He complained of neck pain at that time.[26] Savoie was treated for dizziness on

---

[21] Tr. 152.

[22] Tr. 151.

[23] Tr. 170-174.

[24] Tr. 195-219.

[25] Tr. 136.

[26] Tr. 215.

January 22, 2007. St. Martin ER records show that Savoie was treated on September 19, 2007 for chronic neck pain. His pain level was 8/10.[27]

**FINDINGS AND CONCLUSIONS**

## I.     *The ALJ's Findings*

The ALJ found that Savoie's degenerative disc disease of the cervical spine and chronic pain were severe impairments. The ALJ did not include his cervical disc diagnoses in his severity determination. Continuing to Step 4, the ALJ concluded that Savoie has the residual functional capacity to perform his past relevant work as a parts salesman.

## II.    *Residual Functional Capacity*

### A. Severity

Savoie argues that the ALJ erred in failing to find that his herniated cervical discs were severe impairments, and that this error resulted in an incorrect assessment of his residual functional capacity.

The Fifth Circuit uses the following standard in determining whether a claimant's impairment is severe: "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), citing Estran v. Heckler, 745 F.2d 340, 341 (5th Cir.1984). *See also* Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984); Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir.1984); Davis v. Heckler, 748 F.2d 293, 296 (5th Cir.1984). If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as

---

[27] Tr. 203.

a basis for a finding of disability. 20 C.F.R. §§ 404.1530, 416.930; Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir.1987).

Although the ALJ did not list Savoie's two herniated cervical discs compromising the exiting left neural foramina as severe impairments, he did list the symptoms of these impairments as severe - chronic pain. The inclusion of these symptoms, in combination with the that fact the ALJ did not stop his analysis at Step 2, shows that the ALJ did not err in his severity analysis.

Although the severity analysis was not erroneous, the record does not support the ALJ's RFC assessment.

### B.  Disabling Pain/Savoie's Credibility

A review of the medical records, as detailed above, shows that Savoie has serious medical problems. Savoie has two herniated cervical discs. Savoie has chronic neck pain, headaches and muscle spasm for which he has been prescribed pain medications and muscle relaxants. Savoie is a candidate for neck surgery. Despite the medical evidence and Savoie's complaints, the ALJ determined that Savoie can perform the full range of light work and his past relevant work as a parts salesman. In so finding, the ALJ discounted Savoie's allegations of pain and disability:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible, as they are not supported by the evidence of record. The undersigned cannot ignore the fact that claimant has not sought regular medical treatment for his allegedly disabling conditions. It is reasonable that if his condition was as severe and disabling as alleged, he would have sought regular medical care and followed the treatment prescribed. He is aware that he would be entitled to free medical care through the charity hospital system of this state. As such, claimant's testimony is credible only to the extent it is consistent with the findings herein.

The record reveals claimant was injured in an auto accident in March 2006. At that time he had neck pain and some left arm pain. Claimant began treatment with Dr. Ricardo Leoni who noted in June 2006 that claimant has a herniated disc at C5-6 and C6-7. There are no records from Dr. Leoni after June 29, 2006.

Records from University Medical Center reveal treatment beginning in October 2006. Claimant was seen with complaints of neck and shoulder pain. An MRI was ordered. The MRI revealed a central disc herniation at C5-6 and left posterior lateral disc herniation at C6-7. Claimant was prescribed medication for pain. The most recent records from University Medical Center are dated March 27, 2007. There were no changes noted in claimant's condition. He was instructed to follow up in 5-6 months. There are no further records of any treatment from UMC. Dr. Justin Ardoin, a physician at UMC, completed a medical source statement of claimant's ability to do work related activities in September 2007. There are no medical records accompanying this form or any records in the file to support the limitations assigned by Dr. Ardoin. As such, this report, while not disregarded, is given very little probative weight.

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). The ultimate issue of disability is reserved to the Commissioner. Although the ALJ is entitled to make credibility determinations, when medical evidence supports complaints of pain and the opinions of physicians, the ALJ must have good cause for his credibility decisions. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994);[28] Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). The ALJ's determination in this regard is entitled to considerable deference. Id. However, if uncontroverted medical evidence reveals a basis for the subjective complaints of pain, the "ALJ's unfavorable credibility evaluation of a claimant's

---

[28] "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Id. quoting, Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987). The ALJ is certainly able to decrease reliance on treating physician testimony for good cause. Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995). "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'" Id.

complaints of pain will not be upheld on judicial review . . . at least where the ALJ does not on an articulated basis weigh the objective medical evidence in assigning reasons for discrediting the claimant's subjective complaints of pain." Cook v. Heckler, 750 F.2d at 395.

The ALJ found that Savoie's allegations of pain and its impact on his ability to perform work should be discounted because Savoie had not sought regular treatment that was available through the charity hospital system. The Commissioner argues that if Savoie's pain was disabling he would have sought medical treatment more than twice from March 2007 through February 28, 2008, the date of his hearing.

This ALJ's finding and the Commissioner's argument does not acknowledge that Savoie sought treatment repeatedly after his March 2006 accident from Drs. Durham and Leoni, through UMC treating physicians, and the St. Martin Hospital.

Dr. Durham treated Savoie on March 6, 2006, May 10 and August 23, 2007. Dr. Leoni examined Savoie on June 20 and 29, 2006. UMC treated Savoie on October 24, 2006 and December 5, 2006. St. Martin Hospital treated him on October 28, 2006 and September 19, 2007. He underwent MRI's ordered by Drs. Durham and Leoni; and a neck CT and MRI ordered by UMC. The undersigned thus concludes that the record does not support a finding that Savoie did not seek regular treatment.

The Commissioner also argues that many medical notes indicate that Savoie took only over the counter medication. The medical records show that, in addition to over-the-counter medications like Advil, Savoie has been prescribed Flexeril, Ultram, Medrol Dosepak, and Darvocet. Although DDS Medical Examiner, Christina Eisele, M.D., thought pain medications

could *possibly* get his symptoms under control, his treating physician, Dr. Durham, opined that, even with surgery, she would expect that Savoie would never return to work.

The ALJ's decision to discount Savoie's credibility is not supported by substantial evidence of record. The uncontroverted medical evidence reveals a basis for Savoie's subjective complaints of unrelenting pain - he has two herniated discs and has made repeated attempts to obtain treatment for his pain.

### C.     Treating Physicians

The undersigned also finds that the ALJ erred in giving very little weight to Dr. Ardoin's opinion regarding Savoie's functional capacity. The ALJ's reasoning for rejecting the opinion was that there were no records accompanying the form or otherwise in the file to support is flawed since Dr. Ardoin clearly had access to Savoie's UMC medical records.

The Commissioner attempts to cast doubts that Dr. Ardoin physically examined Savoie before he completed the MSS. The MSS form states at the first paragraph, "To determine *your patient's* ability to do work related activities on a regular and continuous basis , please give your opinion for each activity shown below."[29] Thus, the form itself clearly indicates it was completed by Dr. Ardoin because Savoie was his patient.

The testimony of the treating physician therefore must be given considerable weight unless there is good cause shown to the contrary. See Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994).

---

[29] Tr. 170 (emphasis supplied).

Dr. Duham, also Savoie's treating physician, opined that Savoie would be unable to return to work even if he had surgery. Dr. Durham's opinion is directed to the issue of disability which is reserved to the Commissioner. However:

> opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, SSR 96-5p, 1996 WL 374183, 3 (July 2, 1996).

Here, Dr. Durham and Dr. Ardoin's opinions are supported by the record, including diagnostic testing and Savoie's own testimony. DDS Medical Examiner, Christina Eisele, M.D. believed that could benefit from physical therapy and other medical management that would allow him to get back to his previous level of functioning. However, she opined that Savioe had fairly significant neck pain which supports the finding that Savoie's neck pain is a severe impairment and does not contradict either the opinion of Dr. Durham or Dr. Ardoin.

The record, including Savoie's testimony, Durham's findings and his two cervical discs, I find that there is no good cause to support the ALJ's decision to give very little probative weight to Dr. Ardoin's opinion as to Savoie's physical functional limitations. Moreover, the record does not support the ALJ's decision to discount Smith's complaints of pain. As a result, the ALJ's

RFC assessment that Savoie could perform the full range of light work[30] is not supported by substantial evidence and should have included Savoie's need to alternate sitting, standing, walking throughout the day; require unscheduled breaks every 30 minutes for 10-15 minutes; and need to miss work or have to leave early once a week.

## II. <u>Vocational Expert Testimony</u>

Savoie maintains that the ALJ's finding that he could return to his work as a parts salesman was erroneous and that the ALJ erred in relying on the VEs testimony given in response to a hypothetical that did not include all of his limitations.

### A. *Can Savoie return to his work as a parts salesman?*

The Commissoner submits that Savoie stopped working as a parts salesman not because of the exertional requirements but because the job was becoming computerized and that, although Savoie described his job as a medium-level activity, the VE Wendy Klamm testified that the work is performed as the light level of exertion in the national economy. The Commissioner argues that, because Savoie had the RFC to perform light work, and because the VE testified Savoie

---

[30] Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Title 20 C.F.R. § 404.1567.

could perform his past work, the ALJ's decision that Savoie is not disabled is supported by substantial evidence.

Savoie testified that his job as a parts salesman required him to lift boxes that contained numerous smaller boxes, as well as starters, engines, etc.[31] Ms. Klamm testified that the way Savoie described his work as a parts salesman showed that he typically performed it more at the medium level.[32] The VE testified the job of a parts salesperson in the national economy was typically performed in *the way that Mr. Savoie performed it*, i.e., requiring occasionally fairly heavy lifting.[33] The VE testified that while most lifting would be in the light category, *occasionally* the job would require fairly heavy lifting that would exceed the twenty (20) pound limit.[34] SSR 82-61 states that a claimant will be found to be not disabled when he retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.

Light work is defined to exclude lifting of greater than 20 pounds. Savoie's testimony is Klumm's testimony establishes that Savoie could not perform his past work as a parts salesman either as he performed it or as it is generally performed because the occasional heaving lifting requirement. I therefore conclude that the ALJ's finding that Savoie could return to this work is erroneous.

---

[31] Tr. 41.

[32] Tr. 240.

[33] Tr. 241.

[34] Tr. 241-214.

### B. Hypothetical

The VE also testified that Mr. Savoie had no skills transferable to other light or sedentary work.[35] When the VE was asked whether any limitation in reaching would impact the light or sedentary job base, the VE responded that reaching is important in both sedentary and light jobs.[36]

The evidence of record shows that Savoie's condition is of a chronic and severe nature. The record supports Dr. Ardoin's opinion that Savoie was limited to occasional reaching and push/pull with the right upper extremity, should never reach or push/pull with the left upper extremity, would require unscheduled breaks numerous times during the workday, and who would need to miss work or leave work early at least once a week. Considering this and the VE's testimony that there are no jobs for a person with these limitations, the undersigned finds that the ALJ's determination that Savoie can perform work that exists in significant numbers in the economy is not supported by substantial evidence.

### *Conclusion*

Considering the foregoing, it is recommend that the Commissioner's decision be **REVERSED** and Savoie be awarded benefits consistent with an onset date of March 1, 2006.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond

---

[35] Tr. 242.

[36] Tr. 242-243.

to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on August 10, 2009

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)